IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| QUANTUM SYSTEMS INTEGRATORS, INC., ) ) ) Plaintiff, ) ) v. ) ) SPRINT NEXTEL CORP., ) ) Defendant. ) | Civil Action No.: 1:07-cv-491 |

**MEMORANDUM OPINION**

This matter comes before the Court on remand from the United States Court of Appeals for the Fourth Circuit. On May 17, 2007, Plaintiff Quantum Systems Integrators, Inc. ("Quantum") filed a complaint in this Court alleging copyright infringement and fraud against Defendant Sprint Nextel Corp. ("Sprint"). Quantum sought an award of actual damages in the amount of $1,000,000, statutory damages in the amount of $450,000, and lost profits. The Court rejected Quantum's fraud claim and request for lost profits at the summary judgment stage, and then conducted a trial on the remaining issues.

At the end of trial, the jury issued a verdict in favor of Quantum and awarded Quantum over $78,000 in actual damages and $100,000 in statutory damages. After Sprint moved for judgment as a matter of law, however, the Court reduced the final judgment to $69,600. Additionally, the Court awarded Quantum attorney's fees in the amount of $391,705.00 and costs in the amount of $17,292.41.

On appeal, Sprint objected to the Court's award of attorney's fees and costs. The United States Court of Appeals for the Fourth Circuit issued an unpublished opinion on July 7, 2009

directing this court to reconsider the attorney's fees and costs issue in accordance with *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) and *Rosciszewki v. Arete Assocs., Inc.*, 1 F.3d 225, 234 (4th Cir. 1993). For the reasons stated below, the Court shall award $265,023.00 in attorney's fees to Quantum and $13,132.31 in costs.

## I. ANALYSIS

Title 17, Section 505 of the United States Code provides authority for a court to award full costs to the prevailing party in a copyright infringement action, which includes reasonable attorney's fees. Specifically, this provision states:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505 (2006). Under this provision, the Court must first determine whether Quantum was a prevailing party, then determine if an award of attorney's fees and costs is appropriate, and if so, settle on a reasonable amount.

### A. Whether Quantum is a "Prevailing Party."

An award of attorney's fees to Quantum is only appropriate if Quantum qualifies as a prevailing party. 17 U.S.C. § 505 (2006). The Supreme Court has provided guidance on the definition of "prevailing party." *See Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Res.*, 532 U.S. 598 (2001). Specifically, the Supreme Court stated:

> In designating those parties eligible for an award of litigation costs, Congress employed the term "prevailing party," a legal term of art. Black's Law Dictionary 1145 (7th ed.1999) defines "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded <in certain cases, the court will award attorney's fees to the prevailing party>.-Also termed *successful party*." This view that a

2

"prevailing party" is one who has been awarded some relief by the court can be distilled from our prior cases.

*Id.* at 603. The Supreme Court further explained that one can be a prevailing party "when a party has prevailed on the merits of at least some of his claims." *Id.* The Court also noted that a party can be characterized as "prevailing" even in a situation where the monetary award is limited to nominal damages. *Id.* at 604.

The Fourth Circuit is in full accord with the Supreme Court's definition of prevailing party. Citing *Buckhannon*, the Fourth Circuit explained that "[a]n award of attorneys' fees conditioned on a party's having prevailed does not require the party to have prevailed on every claim; the party's obtaining judicially sanctioned and enforceable final relief on some claims is sufficient." *G v. Fort Bragg Dependent Sch.*, 343 F.3d 295, 310 (4th Cir. 2003); *see also Lytle v. Comm'r of Election of Union County*, 541 F.2d 421, 425 n.6 (4th Cir. 1976) ("'Although a plaintiff may not sustain his entire claim, if judgment is rendered for him he is the prevailing party.'").

Here, Quantum won a jury verdict on some of its copyright infringement claims and was awarded $69,600 in damages as a result. Thus, Quantum prevailed on the merits of some of its claims and obtained judicially sanctioned relief. *See Buckhannon*, 532 U.S. at 603; *G v. Fort Bragg Dependent Sch.*, 343 F.3d at 425. Therefore, Quantum qualifies as a prevailing party.[1]

---

[1] Despite being a prevailing party, Quantum's actual success in this lawsuit was minimal. Specifically, Quantum's claims for fraud and lost profits were dismissed at the summary judgment stage. Furthermore, the $69,600 in damages awarded to Quantum was far less than the $1,000,000 in actual damages and the $450,000 in statutory damages that it originally sought.

## B. Whether an award of Attorney's fees and Costs is Appropriate

Given that Quantum qualifies as a prevailing party, the issue becomes whether an award of attorney's fees and costs is appropriate in this case under 17 U.S.C. § 505. The Supreme Court, in *Fogerty*, provided guidance on this issue. Specifically, the Court stated that

> Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion. "There is no precise rule or formula for making these determinations," but instead equitable discretion should be exercised . . . .

*Fogerty*, 510 U.S. at 534. (internal citations omitted). In *Rosciszewki*, the Fourth Circuit listed factors designed to help guide district courts in making attorney's fees and costs determinations under 17 U.S.C. § 505. *See Rosciszewki*, 1 F.3d at 234 (4th Cir. 1993). Those factors are:

(1) the motivation of the parties
(2) the objective reasonableness of the legal and factual positions advanced by the parties.
(3) The "need in particular circumstances to advance considerations of compensation and deterrence."

*Id.* This list is not exhaustive, as "the district court may also weigh any other relevant factor presented." *Id.* Importantly, bad faith is not a prerequisite for a fee award. *Id.* at 233-34.

Here, all three factors militate towards awarding attorney's fees and costs to Quantum. Regarding Factor 1, the "motivation of the parties" factor, this litigation originated primarily because of Sprint's misrepresentation that it had not operated the MCB software since the earlier settlement.[2] Indeed, Sprint represented that it had not used the software after the settlement even though Sprint's own records showed Sprint operationally using the MCB software after October 7, 2006. The Court views this type of conduct by Sprint as negligent, and does not believe that such conduct is in compliance with a party "motivated to earnestly uphold a contract. Because

---

[2] Quantum had previously sued Sprint on the same software use, and in settling, Sprint agreed to discontinue using any Quantum software now at issue.

4

of Sprint's negligent conduct, the "motivation of the parties" factor supports an award of attorney's fees and costs to Quantum.

Under the second factor, a court is to consider whether the non-prevailing party's positions "were frivolous, on the one hand, or well-grounded in law and fact, on the other." *Rosceszewski*, 1 F.3d at 234. This factor weighs in favor of the non-prevailing party when its legal and factual positions were objectively reasonable. *See, e.g., Alexander v. Chesapeake, Potomac, and Tidewater Books, Inc.*, 60 F. Supp. 2d 544, 551 (E.D. Va. 1999). Once again, while Sprint asserted that it had not operated the MCB software since the settlement, the evidence showed that this assertion was false, and that Sprint indeed had operated the software. Specifically, Sprint represented that only one engineer accessed the MCB software after the settlement date, and that this access was limited to a single day in January of 2007. The evidence showed, however, that the MCB software was accessed over two hundred times in 2006, including fourteen times between August 7, 2006 and October 7, 2006, and on three separate occasions after October 7, 2006. While the Court found that Sprint's misrepresentations did not rise to the level of fraud, the Court does believe that a significant number of Sprint's factual assertions in this case were not well-grounded or reasonable. Therefore, Factor 2 militates towards awarding attorney's fees and costs to Quantum.[3]

The third *Rosceszewski* factor involves the need for compensation and deterrence. In determining the need for compensation, the Court may analyze the relative size of the parties as well as the ability of a party to be assessed with fees to pay the assessment. *Superior Form Builders v. Dan Chase Taxidermy Supply Co., Inc.*, 881 F. Supp. 1021, 1025 (E.D. Va. 1994). Here, Quantum was a two-man software company at the time of the litigation, and Sprint was a

---

[3] The Court chooses to emphasize Sprint's misrepresentation in the Factor 1 and Factor 2 analyses because, as mentioned above, this misrepresentation caused the litigation.

multi-billion dollar corporation. There is no question that Sprint can pay the full amount of what Quantum seeks in attorney's fees and costs, if necessary. Furthermore, Quantum was successful in enforcing a constitutionally-based copyright. Having a legal system that encourages and rewards those who prevent copyright infringement is vital in today's intellectual property-driven economy. Awarding attorney's fees in copyright infringement situations can only promote this interest.

Additionally, awarding attorney's fees and costs in copyright infringement actions likely will have a deterrent effect on present and future infringers. In sum, an award of attorney's fees and costs in this case would, in the Court's view, substantially advance considerations of compensation and deterrence. Therefore, the third factor weighs heavily in favor of granting such an award. Because all three factors militate towards granting an award of attorney's fees and costs to Quantum, the Court finds that such an award is appropriate in this case.[4]

### C. Whether the Attorney's Fees Incurred by Quantum Were Reasonable

Since the Court found that Quantum is entitled to attorney's fees, the Court must now determine whether the amount sought by Quantum is reasonable. A party requesting attorney's fees bears the burden of demonstrating the reasonableness of the fees it seeks to recover. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). "In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). "In deciding what

---

[4] As the Court has stated, the Court does not believe that Sprint's misrepresentations amounted to bad faith. This fact does not bar Quantum from an award of attorney's fees, however. *See Rosciszewki*, 1 F.3d at 233-34 (bad faith not a prerequisite for attorney's fees award).

constitutes a 'reasonable' number of hours and rate, we have instructed that a district court's discretion should be guided by the following twelve factors:

> (1) the time and labor expended;
> (2) the novelty and difficulty of the questions raised;
> (3) the skill required to properly perform the legal services rendered;
> (4) the attorney's opportunity costs in pressing the instant litigation;
> (5) the customary fee for like work;
> (6) the attorney's expectations at the outset of the litigation;
> (7) the time limitations imposed by the client or circumstances;
> (8) the amount in controversy and the results obtained;
> (9) the experience, reputation and ability of the attorney;
> (10) the undesirability of the case within the legal community in which the suit arose;
> (11) the nature and length of the professional relationship between attorney and client; and
> (12) attorneys' fees awards in similar cases."

*Robinson*, 560 F.3d at 243-44 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir.1978) (adopting twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989))).

*i. Analysis of Johnson Factors*

(1) The time and labor required:

At issue in this case was a copyright claim involving complex software developed by Quantum and used in Sprint's intricate telecommunications network. Specifically, six copyrights were at issue. In order to succeed on its claims, Quantum had the burden of proving that the versions of the software used by Sprint in its network were covered by Quantum's copyrights.

Because of the sophistication of the subject matter in this case, the discovery period was very thorough and time intensive. Specifically, Quantum was required to become intimately familiar with Sprint's wireless telecommunications network, including critical network elements

such as HLRs, DAPs, and ISGs. Furthermore, discovery involved the production of hundreds of thousands of documents by Sprint, as well as large tar files produced by Sprint on a number of servers at issue in the case. And as expected, numerous depositions were taken.

Quantum's counsel billed a total of 481.4 hours through the end of discovery. This sum consists of hours billed prior to discovery, as well as hours billed during the five month discovery period. From the time the first hour was billed in this case in April 2007 to the time discovery was complete in mid-October, approximately six months passed. This means that Quantum's attorneys were spending an average of roughly 20 hours per week on this case, which the Court views as reasonable, especially considering the complex nature of the matter.

Sprint argues that the hours Quantum expended in discovery were unreasonably high because Quantum spent hours advancing ultimately unsuccessful claims such as the fraud claim. The Court rejects Sprint's argument. First, Sprint's activity at the outset of this litigation made Quantum justifiably suspicious of fraud. As mentioned above, Sprint represented that it was not using the Quantum software after the settlement date when in fact it had used the software. Quantum attempted, through discovery, to gather facts showing that Sprint committed fraud. The fact that Quantum failed to achieve this goal does not *per se* make the related discovery hours unreasonable. Instead, considering the complexity of the case and the fact that Sprint contributed significantly to Quantum's suspicions of fraud through its post-settlement conduct, the Court finds that the time spent by Quantum's counsel on the case through the end of discovery was reasonable. Additionally, many of the discovery disputes that resulted in Quantum driving up its discovery hours in this case were caused by Sprint's actions. This reality

further supports a finding that the number of hours worked in discovery by Quantum's counsel was reasonable.[5]

Quantum's counsel billed an additional 1014.35 hours through the end of trial, a timeframe that includes the summary judgment motions and the three-day jury trial. Sprint does not dispute that these hours were reasonably expended. The Court agrees, and finds that the hours spent by Quantum's counsel in the case between the end of discovery and the end of trial were reasonable. In sum, the hours Quantum's counsel expended over the entirety of this action were reasonable.

(2) The novelty and difficulty of the questions raised:

As mentioned in the Factor 1 analysis, this case was of a complex nature from a subject matter and legal standpoint. Therefore, this factor supports the reasonableness of the hours expended by Quantum's attorneys as well as the billing rates they charged (see Factor 5 below for billing rate analysis, Section I.C.i.5).

(3) The skill required to perform the legal service properly:

This case required lawyers with particular skills in substantive copyright law and complex litigation. Over four hundred thousand documents were produced by Sprint in this litigation, and the trial exhibit list included over seven hundred exhibits. Quantum's exhibit list numbered over eight hundred. Because this case required highly skilled lawyers to deal with the complex subject matter and legal issues, the third *Johnson* factor supports the reasonableness of the hours expended and rates charged by the Quantum attorneys.

---

[5] As mentioned above, Quantum achieved minimal success in this lawsuit. This fact will ultimately be relied on in other *Johnson* factors to reduce the attorney's fees award. However, the Court does not feel that Quantum's lack of success in this case means that the time and labor it expended during the discovery period was unreasonable.

**(4) The attorney's opportunity costs in pressing the instant litigation:**

This factor is irrelevant in the present case because Quantum's counsel was retained on a fixed fee arrangement.

**(5) The customary fee for like work:**

The attorney's fees sought by Quantum were generated by five attorneys. Four of these attorneys, James Merek, David Voorhees, Robert Blackmon, and John Shannon, were employed by the law firm of Merek, Blackmon, and Voorhees, LLC, which is located in the Northern Virginia area. These individuals, who all reached the partner level, submitted affidavits averring that they each have at least fourteen years of experience as intellectual property attorneys.[6]

Each attorney named in the previous paragraph billed Quantum at a rate of $300 per hour. The Court finds that these rates are reasonable for experienced intellectual property lawyers working in the Northern Virginia area. The Fourth Circuit, in *Grissom*, provided a table illustrating its view on reasonable billing rates for attorneys working in Northern Virginia. This table is provided below:

| Title | Years of Experience | Hourly Rate |
|---|---|---|
| Partner | 18-19+ | $335.00-$380.00 |
| Associate | 6-7 | $250.00 |
| Associate | 5-6 | $250.00 |
| Associate | 2-3 | $200.00 |
| Associate | 1 | $180.00 |

*Grissom*, 549 F.3d at 323. *Grissom* provides a useful benchmark for our case, as it is a Fourth Circuit opinion of recent vintage (2008) involving a commercial litigation of similar complexity

---

[6] Mr. Voorhees, Mr. Merek, Mr. Blackmon and Mr. Shannon have nineteen, seventeen, fourteen, and twenty-eight years of experience, respectively.

10

and reputable attorneys practicing in the Northern Virginia market. According to this table, a reasonable rate for a partner with 18 years of experience is $335.00. Therefore, the rate charged by partners Mr. Voorhees (19 years of experience) and Mr. Shannon (28 years of experience) are well *under* the market value.

Regarding Mr. Merek (17 years of experience) and Mr. Blackmon (14 years of experience), the *Grissom* table leaves a gap regarding attorneys at this experience level. *See Grissom*, 549 F.3d at 323 (gap between Associate with 6-7 years of experience and Partner with 18-19 years of experience). However, after analyzing the rate at which the hourly rates in Table 3 increase in relation to the years of experience, the Court finds that a billing rate of $300 is more than reasonable for Mr. Merek and Mr. Blackmon.

Additionally, Quantum submitted evidence of billing rates for intellectual property lawyers published by the American Intellectual Property Law Association ("AIPLA") for 2007. *See* REPORT OF THE ECONOMIC SURVEY, AIPLA, 2007. The AIPLA's mean billing rate for intellectual property attorneys in the Washington, D.C. area is $435 per hour, and the mean billing rate for the "Other East" category is $306 per hour. This data further supports the reasonableness of the $300 per hour rates charged by Merek, Voorhees, Blackmon, and Shannon, who are all much more experienced than the average attorney.

The only other attorney participating in this case was Joseph Strabala, the father of the president of Quantum, Jon Strabala. Joseph Strabala is a San Francisco attorney who runs his own law office. Despite having over 40 years of experience as a litigator, including many intellectual property matters, Joseph Strabala never charged his son at a rate of more than $250 per hour. This rate can be considered a discount for the San Francisco area. As the AIPLA study states, the mean rate charged by a San Francisco intellectual property attorney is $469,

which is over $30 more than the mean Washington, D.C. rate. For these reasons, the Court finds that the rates per hour charged by Mr. Strabala were reasonable.

In sum, the Court finds that all of the rates charged by the five Quantum attorneys participating in this case were reasonable. Importantly, Sprint does not dispute this conclusion.

(6) The attorney's expectations at the outset of the litigation:

This factor provides no additional support for an award of attorney's fees, since the fee arrangement was fixed.

(7) The time limitations imposed by the client or circumstances:

The record contains no evidence that Quantum's attorneys were under abnormal time limitations. Thus, this factor provides no additional support for an award of attorney's fees.

(8) The amount in controversy and the results obtained:

"[T]he degree of success obtained by the plaintiff is the 'most critical factor' in determining the reasonableness of a fee award." *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 675 (E.D. Va. 2005) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-437 (1983)). As mentioned above, Quantum filed a complaint in this Court alleging copyright infringement and fraud against Sprint. Quantum sought an award of actual damages in the amount of $1,000,000, statutory damages in the amount of $450,000, and lost profits. The Court rejected Quantum's claims for fraud and lost profits at the summary judgment stage, and then conducted a trial on the remaining issues. At the end of trial, the jury issued a verdict in favor of Quantum and awarded Quantum over $78,000 in actual damages and $100,000 in statutory damages. After Sprint moved for judgment as a matter of law, however, the Court reduced the final judgment to $69,600. In sum, Quantum sought nearly $1.5 million in damages and received just over

$69,000. Practically speaking, while Quantum technically qualifies as a prevailing party, the success it actually achieved in this lawsuit was minimal. Therefore, this critical factor militates heavily in favor of reducing the amount in attorney's fees awarded to Quantum.

(9) <u>The experience, reputation and ability of the attorney</u>:

As mentioned above in the Factor 5 analysis, all of the attorneys representing Quantum in this matter are very experienced intellectual property attorneys. This experience supports a finding that the rates charged by these attorneys were reasonable.

(10) <u>The undesirability of the case within the legal community in which the suit arose</u>:

This factor provides no additional support for an award of attorney's fees, as Quantum does not contend that this case was undesirable.

(11) <u>The nature and length of the professional relationship between attorney and client</u>:

Joseph Strabala had a significant professional relationship with Quantum, since he is the father of the president of the company, and has represented Quantum in a number of matters over the years. This relationship was reflected in the discounted fee rate that Mr. Strabala charged his son. Mr. Merek, Mr. Voorhees, Mr. Blackmon, and Mr. Shannon have only represented Quantum in this action and in the first action. The Court finds that this factor supports the reasonableness of the hourly rates charged by Quantum's attorneys, but accords the factor low persuasive value in the overall balancing analysis.

(12) <u>Attorney's fees awards in similar cases</u>:

The Court believes that the number of hours expended and attorney's fees incurred in this litigation are comparable to other cases. Furthermore, the Court believes the rates charged by the

attorneys are consistent with those charged by other intellectual property practitioners in Northern Virginia. Therefore, this factor supports the reasonableness of the attorney's fees charged by Quantum.

Balancing:

In sum, *Johnson* factors, 1-3, 5, 9, 11, and 12 militate towards finding that the attorney's fees charged by Quantum were reasonable. Factors 4, 6, 7, and 10 provide no additional support in Quantum's favor. And Factor 8 supports a significant reduction in any attorney's fees award to Quantum, given the lack of success achieved by Quantum in the litigation.

*ii. Lodestar figure*

"Guided by [the *Johnson*] factors, the court should determine how many hours were reasonably spent on the litigation and the rate at which that work should be compensated." *Toolchex, Inc. v. Trainor*, 2009 WL 224486 at *6 (E.D. Va. July 24, 2009) (citing *McDonnell v. Miller Oil Co.*, 134 F.3d 638, 640 (4th Cir.1998)). "On that basis, the court can determine a 'lodestar figure,' which may be adjusted further." *Id.* Table 1 provides a summary of the hours billed at specific rates in this matter.

| Category | Hours Worked | Rate | Total |
|---|---|---|---|
| Through end of discovery | David Voorhees = 228.50 | $300/hr | $68,550 |
| | James Merek = 178.75 | $300/hr | $53,625 |
| | Robert Blackmon = 0.00 | $300/hr | $0 |
| | John Shannon = 0.00 | $300/hr | $0 |
| Through end of discovery | Joe Strabala = 10.00 | $185/hr | $15,600 |

|  |  |  | 45.75 | $200/hr |  |
|---|---|---|---|---|---|
|  |  | = | 18.40 | $250/hr |  |
| End of discovery through trial | David Voorhees | = | 396.50 | $300/hr | $118,950 |
|  | James Merek | = | 412.30 | $300/hr | $123,690 |
|  | Robert Blackmon | = | 88.00 | $300/hr | $26,400 |
|  | John Shannon | = | 113.80 | $300/hr | $34,140 |
| End of discovery through trial | Joe Strabala | = | 3.75 | $200/hr | $750 |
|  | **Total Hours = 1,495.75** |  |  |  | **Total Fees = $441,705.00** |

As evident in the above table, Quantum's counsel earned a total of $441,705 for 1,495.75 hours billed. Quantum, however, admits that a reduction in this fee amount is appropriate because of its lack of success regarding the fraud claim. Specifically, Quantum recommends shaving 166 hours from the total hours amount at a rate of $300 per hour, which would reduce the total fees amount by $50,000 to $391,705.

The Court finds that a more significant reduction in the attorney's fees award is appropriate having further considered the additional briefing of the parties and the analysis identified above. *See Lilienthal*, 322 F. Supp. 2d at 675 (quoting *Hensley*, 461 U.S. at 436-37.) ("[b]ecause the degree of success obtained by the plaintiff is the 'most critical factor' in determining the reasonableness of a fee award, the district court 'may simply reduce the award to account for the limited success.'"). There is "no precise rule or formula" for making a lodestar reduction. *Hensley*, 461 U.S. at 436. Besides reducing the overall award, the court has the option of "identify[ing] specific hours that should be eliminated." *Id.* at 436-37.

Here the Court elects to reduce the total award to account for Quantum's limited success, rather than reducing specific hours. The Court shall reduce the lodestar amount of $441,705 by 40% to $265,023. *See, Lilienthal*, 322 F. Supp. 2d at 675 (where the relief obtained was significantly less than the relief sought, court reduced lodestar figure by 40%); *Guidry v. Clare*, 442 F. Supp. 2d 282, 295-96 (E.D. Va. 2006) (reducing requested amount by 40% where large percentage of claims were frivolous). In reducing the lodestar value, the court applies "a rough sense of equity" to its knowledge of the litigation at issue. *Lilienthal*, 322 F. Supp. 2d at 675. For the reasons stated above, Quantum shall be awarded attorney's fees in the amount of $265,023.00.

## D. Bill of Costs

Pursuant to the Court's holding in Section I.B above, Quantum is entitled to recover costs in addition to attorney's fees under 17 U.S.C. § 505. Quantum's bill of costs lists deposition, hearing and trial transcript costs, as well as copying, court filing, and service of process costs. Sprint disputes the amount that Quantum requests in deposition transcript costs on the grounds that Quantum unnecessarily paid fees for expedited delivery, and that the relevant bill of costs statutory language does not permit recovery of unnecessary expedited transcript delivery fees.

A circuit split exists on the issue of what types of costs are covered by 17 U.S.C. § 505. The statute states that "full costs" are recoverable. 17 U.S.C. § 505 (2006). Courts have debated whether this full cost language enables 17 U.S.C. § 505 to encompass more than the general bill of costs statute, 28 U.S.C. § 1920. The Eighth and Eleventh Circuits, for example, have held that the scope of 17 U.S.C. § 505 regarding the costs issue is the same as the scope of 28 U.S.C. § 1920. *See Pinkham v. Mary Ellen Enters., Inc.*, 84 F.3d 292, 295 (8th Cir. 1996); *Artisan Contractors Ass'n. of Am., Inc. v. Frontier Ins. Co.*, 275 F.3d 1038, 1039-40 (11th Cir.2001).

The Seventh and Ninth Circuits, on the other hand, have explained that 17 U.S.C. § 505 is broader in scope than 28 U.S.C. § 1920. *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005); *Susan Wakeen Doll Co. v. Ashton Drake Galleries*, 272 F.3d 441, 458 (7th Cir.2001).

In this case, the Court is not required to make a determination regarding scopes of 17 U.S.C. § 505 and 28 U.S.C. § 1920 because the Court finds that the expedited transcript fees would not be recoverable under either provision given the facts of this particular case.[7] This conclusion is compelled by the fact that Quantum provides no legitimate reason explaining why it needed the transcripts in an expedited manner. Instead, Quantum merely makes the following conclusory assertion in its brief: "The expedited service was necessary due to time constraints in this case." Quantum provides no details of what those time constraints entailed and why the constraints caused Quantum to require the transcripts in an expedited fashion. The Court cannot assume, without explanation, that this expedited deposition transcript fee was necessary to the litigation. *See Tips Exp., Inc. v. Music Mahal, Inc.*, 2007 WL 952036 at *11 (E.D.N.Y. 2007) ("Costs are ordinarily recoverable if they are incidental and necessary to the litigation.") (internal quotations omitted). Instead, the Court views the expedited transcript deposition fees as payment for a luxury enjoyed by Quantum. The Court does not find it appropriate to require Sprint to pay for this type of cost when Quantum has failed to provide an adequate justification for it. *See Synergistic Intern., L.L.C. v. Korman*, 2007 WL 517676 at *3 (E.D. Va. 2007) (sustaining defendant's objection to costs regarding the expedited preparation of transcripts where defendant met burden of showing that taxation of costs would be improper in light of plaintiff's failure to

---

[7] The Court also finds that all other costs sought by Quantum are covered by both statutes.

justify the expeditious preparation). Therefore, the Court must reduce the deposition transcript fees to reflect a non-expedited amount.[8]

Quantum argues that the expedited deposition transcript fees can be recovered as part of the attorney's fees award. Quantum's assertion would be correct if these fees were reasonably incurred. The Court does not find, however, for the reasons provided in the previous paragraph, that these expedited transcript fees were reasonable charges.

Regarding the Court's calculation of the bill of costs to reflect a non-expedited transcript fee amount, the Court considers its official Court Reporter's standard rate per page. *See Synergistic Intern., L.L.C.*, 2007 WL 517676 at *3 (applied its own Court Reporter's standard rate of $3.30 per transcript page). In this case, two different page rates apply. This is because some of the transcripts were ordered during a time when the standard transcript rate was $3.30 per page, and some when the rate was $3.65 per page.[9]

A summary of the relevant transcript information for this case is provided below:

| Transcript Name (Date) | Pages | Rate ($/page) | Total Cost per Transcript ($) |
|---|---|---|---|
| Brian Russo (10/9/07) | 115 | 3.30 | 379.50 |
| Dr. Thomas Varner (10/10/07) | 176 | 3.30 | 580.80 |
| Brian Crooks (9/28/07) | 18 | 3.30 | 59.40 |
| Steve Cooper (9/28/07) | 27 | 3.30 | 89.10 |
| Ryan Robertson (10/26/07) | 121 | 3.65 | 441.65 |
| Jon Strabala (10/12/07) | 358 | 3.30 | 1181.40 |
| Thomas Smith (9/24/07, 10/11/07) | 285 | 3.30 | 940.50 |
| Thomas Smith (1/24/08) | 62 | 3.65 | 226.30 |
| Status Conference | 20 | 4.85 | 97.00 |

---

[8] Sprint does not challenge the fees paid by Quantum for the expedited transcripts for the status conference and summary judgment hearing. Given the close proximity of these two events to the trial, the Court agrees that the expedited premium paid for these transcripts was reasonable and necessary to the litigation. As a result, expedited rates will be used in the bill of costs analysis for these two transcripts.
[9] On October 18, 2007, this Court raised its standard transcript rate from $3.30 to $3.65 per page.

| Summary Judgment Hearing | 41 | 4.85 | 198.85 |
|---|---|---|---|
| Trial Transcript | 557 | 1.20 | 668.40[10] |
| | | Total Cost = | $4,862.90 |

The only other costs disputed by Sprint are the charges for condensed transcripts and disks. The Court agrees that these costs should not be taxed. Local Rule 54(D)(1) only permits the recovery of costs that are itemized. *See* Local Rule 54(D)(1) ("itemization and documentation for requested costs in all categories shall be attached to the cost bill.") The condensed transcript and disk charges, however, are not individually identified in the invoices. Instead, these charges are combined with the expedited transcript fees. This lack of itemization precludes Quantum from recovering the condensed transcript and disk costs.

The following table depicts all of the costs that shall be awarded in this case:

| Cost | Amount ($) |
|---|---|
| Transcript Costs | 4,862.90 |
| Copying Costs | 7,844.41 |
| Court Filing Fee and Service of Process | 425.00 |
| TOTAL COSTS | $13,132.31 |

In sum, the Court shall award Quantum costs in the amount of $13,132.31.

## II. CONCLUSION

For the foregoing reasons, this Court shall award Quantum attorney's fees in the amount of $265,023.00 and costs in the amount of $13,132.31. This award shall supersede the Court's previous award of attorney's fees and costs to Quantum.

ENTERED this 16th day of October, 2009

/s/ [signature]
Liam O'Grady
United States District Judge

Alexandria, Virginia

---

[10] Quantum paid $1.20 per page for this transcript. Because applying the $3.65 court reporter would result in a value higher than what Quantum paid, the actual rate of $1.20 will be used in the bill of costs calculation.